Brinkerhoee J.
Before proceeding to what we regard as the ruling question in this ease, it may be well to dispose of ,two minor points outside of that, made by the record and noticed by counsel in argument. They are :
1. In the contract between the parties it'was stipulated that the bond to be given by the vendee for the deferred payments of the ^purchase money, should provide that if the vendee were compelled to pay any lien on the premises, he was to be allowed to deduct the same from the amount secured by the bond. And it has been suggested that this provision in the contract would, to some extent, absolve the vendor from the letter of his obligation to furnish the vendee with “ a perfect title to the premises ’ ’ sold. We are clear in the opinion that this is not so. This stipulation was not intended for the benefit of the vendor, but for the benefit of the vendee ; and to shield him from the consequences of possible oversight, neglect, inability, or fraudulent concealment on the part of the vendor, and leaving his obligation to make “ a perfect title to the premises ” sold, intact and absolute.
*411 2. It seems from the record that Lewis, the vendee, was for a time in possession of the premises sold. But this possession did not arise from any right conferred upon the vendee by the contract between the parties. The premises which were the subject-matter of the contract were sold, subject to a subsisting lease to one Chapin; and the only possession which the vendee had, was derived from the purchase by him of the right of jiossession from a sub-lessee of Chapin. The vendee, therefore, while in the possession of the premises bought by him, was not in possession under the contract with his vendor, but under a lease outstanding and subsisting at the time of his purchase, and subject to which his purchase was made. And it follows from this, that the temporary possession of the vendee presents no obstacle to a rescinding of the contract by him by reason of inability on his part to leave the vendor in statu quo. In case of a rescission of the contract between the parties, the vendor is left as he would be on the expiration of the lease subject to which the vendee purchased.
We come now to the controlling question in the case, which is: Had the vendee a right to rescind the contract at the time when he assumed to rescind it ? The court below, in its charge to the jury, seems to have proceeded on the idea that the right of a party to rescind a contract, and the right of the same party to maintain an action on a contract, were necessarily co-existent; that the right of a party to rescind *could not exist except under circumstances and conditions in which, he would be entitled to maintain an action on, and enforce the contract, if he chose to do so. But this we think was a mistake; and it is important to bear in mind this distinction.
By the terms of the contract between the parties, the vendee was to pay to the vendor §1,000 in hand. This was done. The other stipulations in the contract between the parties were mutual and dependent. They were to be performed respectively at the same time. But a readiness on the part of the vendor to perform was, by the terms of the contract, to precede, and such readiness was a condition precedent to the arising of any obligation on the vendee to perform on his part.
By the terms of the contract, the vendor was to send to his agent at Cleveland a deed conveying “ a perfect title to the promises,” by the 21st of April, 1856. Then, on the payment by the vendee of §2,000 more, and the execution by him of a bond for *412 the deferred payments, the deed was to be delivered by the agent of the vendor to the vendee. A warranty deed of the premises was accordingly lodged with the vendor’s agent, and on the 25th and 26th of April, 1856, the same was offered by the agent of the vendor to the vendee. The latter declined to receive it, as he might well do, for the reason that there remained an unquestioned mortgage incumbrance on the premises. It does not appear that the vendee, thus far, made any demand, or offer, or took any other step indicating to the vendor or his agent a purpose to insist on a strict adherence to the contract in respect to time. Thus matters remained until the 8th of the following month, when the vendee formally offered to the vendor’s agent to pay the money and execute the bond stipulated to be paid and executed by him, and demanded a deed conveying “ a perfect title to the premises.” The mortgage incumbrance still remaining on the premises, this demand was not, as it could not be, complied with. The vendee thereupon immediately notified the vendor that he rescinded the contract; and from thence forward the vendee abandoned such possession of the premises as he had, and continued to treat the contract as being %t end. And from this time also (8th May, 1856), until the 26th of July following, the vendor still remained delinquent, and unable to make the “ the perfect title to the premises ” which he was bound to make. Then, having succeeded in removing the mortgage incumbrance, he tendered performance on his part and demanded it on the part of the vendee ; and the latter insisting that the contract was rescinded, and refusing to recognize it as a subsisting obligation, the vendor sold the premises at auction, and brough this suit to recover his loss on that sale. We think he was too late.
The distinction between the right of a party to sue upon a contract, and the right of the same party to rescind it, must not be ignored. Lot it be conceded that the vendee could not himself maintain an action on the contract until he had tendered performance, or offered, in good faith, to perform on his part. And let it be conceded, further, that the vendee’s offer of performance on the 8th of May was not made in good faith; that he had then determined to get rid of the contract if he could; and that the offer was made simply with a view to do something to justify him in rescinding it. It will follow from this, as I suppose no one will controvert, that the vendee was not in a position to enforce the contract by action *413 upon it; but it does not follow that he was not in a position authorizing him to declare and treat it as rescinded. His demand for a title such as the vendor was bound to furnish, his hypocritical offer of performance, and his notice of a recission by him-, were at least a sufficient showing of his unwillingness to consent to a further waiver or extension of the time fixed by the contract for performance by the vendor, and of his wish and determination 'to rescind the contract if he could. That he consented on the 8th of May, and continuously thereafter, to a rescission of the contract; that he was anxious to rescind it, and that this anxiety was the prompting motive of his sham offers of performance on the 8th of May, there can be no doubt. Indeed, it is a leading element in the vendor’s case as presented in argument. And from this 8th of May until the 26th of July following, the vendor continued delinquent by reason of inability to perform on his part.
*Now, these parties were free, by mutual consent, to enter ' into this contract; and they were as free, by like mutual consent, to rescind it. On the 8th of May, and from thence forward, the vendee actually and in terms consented to its rescission. And the vendor, by a delinquency on his part unwaived by the vendee, and unreasonable in itself, is conclusively presumed to have given a like consent. And such is the doctrine of the books. Parsons on Contracts, 677, et seq., says: “ Generally, as a contract can be made only by the consent of all the contracting parties, it can be rescinded only by the consent of all. But this consent need not he expressed as an agreement. If either party, without right, claims to rescind the contract, the other .party need not object, and if he permit it to be rescinded, it will be done by mutual consent. Nor need this purpose of rescinding be expressly declared by the one party, in order to give to the other the right of consenting, and so rescinding. There may be many acts from which the opposite party has a right to infer that the party doing them would rescind; and generally where one fails to perform his part of the contract, or disables himself from performing it, the other party may treat the contract as rescinded.”
"We are of opinion, therefore, that the court below erred in charging that “if the jury should find that Lewis did not make the offer in good faith, or was not able and willing to perform on his part, and did not, in good faith, intend to perform, and went there merely to make a show of performing, and demanded the deed *414 merely for the purpose of getting rid of the contract, if White was not prepared to perform; and if the jury should find that White paid off said incumbrance, and that, after he had done so, he, on or about the 25th July, 1856, tendered the deed to Lewis conveying a perfect title, and Lewis refused to fulfill, Lewis was thereby in default, and White would be entitled to a verdict for the difference between the contract price and the actual value of the promises at the time of such tender, deducting from the difference the amount already paid on the contract.” And for this reason the judgment will be reversed and the cause remanded.
And we can see no reason why, on the facts assumed, the vendee has not a right, under his cross-petition, to recover *baek the money paid in hand by him on the making of the contract of sale.

Judgment accordingly.

Scott, C. J., and Day, White, and Welch, JJ., concurred.